UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff/Respondent,<br><br>v.<br><br>VIRES AL-HAKIEM,<br><br>　　Defendant/Petitioner. | Case No. 22-20626<br>Honorable Laurie J. Michelson |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS [63]**

Vires Al-Hakiem is currently incarcerated at Federal Correctional Institution Milan. He is a non-citizen who will be deported upon the completion of his sentence. He thinks his release date should be earlier than the release date calculated by the Bureau of Prisons. Al-Hakiem has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the BOP's refusal to apply his earned time credits under the First Step Act. The government responds that Al-Hakiem has only earned five days of time credits and is not entitled to have them applied because he is subject to a final order of removal. The government's position is supported by the FSA and its applicable implementing regulations. Thus, Al-Hakiem's petition is DENIED.

I.

Vires Al-Hakiem is a native of Iraq and citizen of the Netherlands. After he sent threatening text messages to his ex-wife in September 2021, law enforcement agents executed a search warrant at his residence. The agents recovered six firearms,

83 hand-gun and long-gun magazines (many of which were high-capacity), and thousands of rounds of ammunition. At the time of this seizure, Al-Hakiem's "prior permission to enter the United States had expired," meaning he was "illegally and unlawfully present in the United States." (Revised Presentence Investigation Report, ¶ 20 (Sealed).)

On November 21, 2022, Al-Hakiem was charged in a one-count Information with being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(a). (ECF No. 26.) A few months later, he pled guilty pursuant to a plea agreement with the government. (ECF No. 30.) As part of the plea agreement, Al-Hakiem agreed "to the entry of a stipulated judicial order of removal" pursuant to 8 U.S.C. §§ 1228(c)(5) and 1182(a). (*Id.* at PageID.119.) The parties, though, did not agree on the date the order of removal should be entered. The government's position was that the order should be entered on the date of sentencing. (ECF Nos. 42, 53.) Al-Hakiem requested entry on the date he completed his term of incarceration so that, if eligible, he could earn time credits under the First Step Act. (ECF Nos. 44, 52.) Finding no clear answer in the relevant statutes or the parties' plea agreement, the Court ultimately decided that it would enter the stipulated order of removal on July 8, 2024. (Minute Entry, July 26, 2023.)[1]

Al-Hakiem was sentenced to 60 months' imprisonment on June 1, 2023. (ECF No. 48.) The parties' stipulated order of judicial removal, per the Court's ruling, was

---

[1] The Court learned that the BOP had calculated January 6, 2025, as the date Al-Hakiem was eligible, at the BOP's discretion, to be released to a halfway house. The first weekday one year prior to that date was January 8, 2024.

2

entered on July 8, 2024. (ECF No. 58.) It was subsequently lodged by the Department of Homeland Security on August 5, 2024, and forwarded to the Bureau of Prisons. (ECF No. 68, PageID.498 (Sealed).)

Now before the Court is Al-Hakiem's habeas petition pursuant to 28 U.S.C. § 2241, contending that the Bureau of Prisons improperly denied him earned time credits under the First Step Act from May 2023 until the entry of the final order of removal on July 8, 2024. (ECF No. 63.)[2] Al-Hakiem acknowledges that he would not be entitled to any time credits after entry of the final order of removal. (*Id.*) The Court directed a series of responses from the government, in which they oppose Al-Hakiem's petition. (ECF Nos. 68, 71 (Sealed).) No timely reply was filed and no further argument is needed. *See* E.D. Mich. LR 7.1(f).

## II.

Habeas corpus relief is properly sought under 28 U.S.C. § 2241 where a federal inmate is challenging the way his sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). "Complete exhaustion of administrative remedies is a prerequisite to seeking review of the BOP's calculation of sentencing credit." *United States v. Singh*, 52 F. App'x 711, 712 (6th Cir. 2002) (citing *United States v. Westmoreland*, 974 F.2d 736, 737–38 (6th Cir. 1992)); *see also Applewhite v. Terris*,

---

[2] Al-Hakiem was not sentenced until June 1, 2023. So that is the earliest date he could have started to earn time credits. *See* 18 U.S.C. § 3632(d)(4)(B)(ii). The government's bare assertion that Al-Hakiem would not have been entitled to earn credits until he was designated to a BOP facility on September 28, 2023 (ECF No. 68, PageID.499), is contrary to the current weight of authority. *See Gale v. Rardin*, No. 24-13127, 2025 U.S. Dist. LEXIS 8739, at *9–10 (E.D. Mich. Jan. 16, 2025) (collecting cases).

3

No. 17-2140, 2018 U.S. App. LEXIS 26538, at *2 (6th Cir. Sept. 18, 2018) ("Federal prisoners can seek judicial review of the BOP's computation of their sentences only after exhausting their administrative remedies."). Here, that entails submitting a formal request at the institutional level, followed by an appeal to the BOP's Regional Office and, if necessary, an appeal to the Office of General Counsel. 28 C.F.R. §§ 542.14(a), 542.15(a).

Al-Hakiem submitted a request for administrative remedy on October 22, 2024, seeking an award of his earned FSA credits from May 31, 2023, to July 8, 2024 (ECF No. 63, PageID.451) and then appealed his eligibility determination to the BOP's regional office on December 5, 2024 (*id.* at PageID.449). He received no response. (*Id.* at PageID.444.) His petition does not contain any information about the final step. He identifies futility and lack of access to grievance procedures as exceptions to exhaustion, but does not explain or show how they apply here. (*Id.* at PageID.440.) Nevertheless, futility might apply.

Al-Hakiem did not receive a response to his appeal from the Regional Office. Thus, one of the primary benefits of exhaustion, promoting efficiency by providing a means to resolve claims more quickly and economically before an agency rather than in litigation in federal court, *see Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006), does not apply here. And without a response from the Regional Office, Al-Hakiem may have been uncertain as to the need to further appeal to the Office of General Counsel. Lastly, the affidavit submitted by the Milan Case Management Coordinator makes clear that the BOP has already made a final decision as to the calculation of Al-

Hakiem's time credits. Thus, as exhaustion appears to be futile, the Court will consider Al-Hakiem's claim.

### III.

The First Step Act, as part of its prison and sentencing reforms, established incentives for federal inmates to participate in rehabilitation programming. Eligible inmates who successfully complete evidence-based recidivism reduction programming (EBBRs) or productive activities (PAs) "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A)(i). An inmate determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation." *Id.* § 3632(d)(4)(A)(ii).

In evaluating the propriety of the BOP's calculation of Al-Hakiem's release date, step one involves a determination of whether Al-Hakiem has earned qualifying time credits. Here, the government has provided un-refuted documentation that Al-Hakiem has only accrued five days of credit for successful participation in evidence-based recidivism reduction programming or productive activities and has had 516 days disallowed. (ECF No. 71-3, PageID.539 (Sealed).) Evidently, Al-Hakiem declined to participate in the non-residential drug treatment program, his GED progress has been deemed unsatisfactory, and he failed to complete numerous educational courses that he started. (*Id.* at PageID.539–540.) It is true that prior to July 2024, Al-Hakiem accrued hours for participating in other educational courses, but they total only the

five days calculated by the BOP. (ECF No. 71-5 (Sealed).) Additionally, he has had three disciplinary incidents since December 2024, which have resulted in the loss of earned good time credits. (ECF No. 71, PageID.529; ECF No. 71-6 (Sealed).) These credits are separate from FSA programming credits but could also explain why Al-Hakiem's release date is later than his expectation.

Step two then involves a determination of whether the five days of earned time credits should be applied. As the government points out, there is a difference between *earning* credits and *applying* credits. (ECF No. 71, PageID.527.) Not all inmates are eligible to either earn or apply time credits. *See* 18 U.S.C. § 3632(d)(4)(D)–(E). Relevant here, the FSA expressly provides that "[a] prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws." *Id.* § 3632(d)(4)(E)(i); *see also* 28 C.F.R. § 523.44(a)(2) (provision titled "Application of FSA Time Credits" explaining that "any inmate eligible to earn FSA Time Credits" subject "to a final order of removal under [federal] immigration laws . . . may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release"). As more fully explained in the declaration provided by M. Burnett, a Milan Case Management Coordinator:

> 5. *[E]arning* FTCs is not synonymous with *applying* FTCs. Only upon meeting the requirements of 18 U.S.C. § 3624(g)(1) and § 523.44(b)–(d), will an inmate's earned FTCs be applied toward his sentence computation—provided the inmate is not subject to a final order of removal under any provision of immigration laws. Inmates subject to a final order of deportation are rendered ineligible to apply FTCs to their sentence per 18 U.S.C. § 3632(d)(4)(E). Pursuant to Program Statement 5410.01 CN-2, for inmates "subject to a final order of removal under

6

immigration laws as defined in 8 U.S.C. § 1101 (a)(17) (*see* 18 U.S.C. § 3632(d)(4)(E)), the Bureau may *not* apply FSA Time Credits toward prerelease custody or early transfer to supervised release."

6. On August 5, 2024, a final order of removal under Section 238(b) of the Immigration and Nationality Act was lodged for Defendant by the Department of Homeland Security, U.S. Immigration and Customs Enforcement. Therefore, the Defendant is no longer eligible to apply any earned FTCs to his sentence because he now has a final order of deportation.

(ECF No. 71-1 (Sealed).)

What concerns Al-Hakiem, however, is that he was not the subject of a final order of removal until July 8, 2024 (or, really, August 5, 2024, when ICE lodged the order). He reasons that the FSA prevents him from accumulating additional earned time credits after the final order of removal was issued, but argues that the time credits he accumulated prior to the issuance of this order should be applied against his release date. He does not cite any supporting law, however, and the relevant provisions of the FSA and its implementing regulations contain no such dichotomy. As one court explained in rejecting the very argument being raised by Al-Hakiem:

> Petitioner is not entitled to relief. He is subject to a final removal order. As such, he is statutorily ineligible for FSA earned time credits towards early release.
>
> The fact that Petitioner earned FSA credits towards his early release before the final removal order was entered against him does not alter the result. As an initial matter, § 3632(d)(4)(E)(i) makes no exception for credits earned before the entry of a final removal order. *See Cabrera-Huato v. USP Lompoc Warden*, No. 24-02892, 2024 U.S. Dist. LEXIS 130211, 2024 WL 3467801, at *3 (C.D. Cal. June 5, 2024) (holding that bar on FSA credits being applied to prisoners with final removal orders "prevents Petitioner from applying to his sentence even those FSA credits he may have earned prior to becoming subject to the final removal order."), *accepted by* 2024 U.S. Dist. LEXIS 146090 (C.D. Cal. Aug. 9, 2024); *see also Felix-Felix v. Engleman*, No. 23-01722, 2023 WL 3903817, at *2 (C.D. Cal May 11, 2023) ("Section 3632(d)(4)(E)(i)

7

categorically bars early release for inmates who are subject to a final order of removal."), *accepted by* 2023 WL 3901778 (C.D. Cal. June 7, 2023).

*Luna v. Warden*, No. 24-03293, 2024 U.S. Dist. LEXIS 216787, at *5–6 (C.D. Cal. Oct. 3, 2024) (first three citations omitted). Other cases are in accord. *See Aguayo v. Neely*, No. 24-00340, 2024 U.S. Dist. LEXIS 236520, at *4 (N.D. Ala. Dec. 5, 2024) (finding that BOP did not err in failing to apply earned time credits to the sentence of a defendant subject to an order of removal even where the order was not entered until the end of defendant's sentence), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 3731 (N.D. Ala. Jan. 8, 2025); *Batioja Cuero v. Warden, FCI Berlin*, 748 F.Supp.3d 58, 66 (D.N.H. 2024) ("Courts have found no ex post facto violation in BOP's recalculation of a non-U.S. citizen's sentence to exclude FSA earned time credits after that person became the subject of a final order of removal.") (collecting cases); *Herrera v. Rardin*, No. 24-11492, 2024 U.S. Dist. LEXIS 223278, at *13 (E.D. Mich. Dec. 10, 2024) ("Petitioner had notice of his immigration detainer at all relevant times, and his ability to earn FSA time credits from the beginning was subject to the limitation that he would be unable to apply those credits if he were ever the subject of an order of removal.").

Moreover, even if such an exception existed, it would not help Al-Hakiem. The maximum amount of FSA time credits that can be earned towards an early release is 365 days. *See* 18 U.S.C. § 3624(g)(3). But these credits cannot be applied to a sentence until an inmate has earned credits "in an amount equal to the remainder of the prisoner's imposed term of imprisonment." *Id.* § 3624(g)(1)(A). Given the limited

8

amount of credits earned vis-à-vis the time left on his sentence, Al-Hakiem does not yet qualify. "Consequently, he was not eligible to have FSA earned time credits applied towards his early release at any point before the final removal order was issued." *Luna*, 2024 U.S. Dist. LEXIS 216787, at *6–7; *see also Zaman v. Birkholz*, No. 23-00177, 2023 WL 8039828, at *2 (C.D. Cal. Aug. 18, 2023) (finding that petitioner was not entitled to FSA credits he earned before the issuance of a final removal order because he had not earned sufficient credits before the final removal order was issued), *report and recommendation adopted*, 2023 WL 8025516 (C.D. Cal. Nov. 20, 2023). Indeed, Al-Hakiem's projected release date—absent FSA credits—is January 3, 2026. (ECF No. 71-2 (Sealed).) Thus, the earliest possible date that FSA earned time credits could have been applied towards his early release was January 3, 2025. But the final removal order against him was lodged many months earlier on August 5, 2024.

## IV.

Because Al-Hakiem is subject to a final order of removal, he is ineligible to have FSA time credits applied towards his early release. Thus, there is no error in the BOP's calculation of his time credits that warrants correction under § 2241. So Al-Hakiem's petition to correct unconstitutional confinement (ECF No. 59) is DENIED.

IT IS SO ORDERED.

Dated: May 9, 2025

<div style="margin-left:2em">

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

</div>